FILED
1/29/20 2:13 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>**DAMIEN W. HARMS** and<br>**CASEY M. HARMS**,<br><br>    *Debtors.* | Case No. 18-22406-GLT<br>Chapter 7 |
| **UNITED STATES TRUSTEE**,<br><br>    *Movant*,<br><br>v.<br><br>**DAMIEN W. HARMS** and<br>**CASEY M. HARMS**,<br><br>    *Respondents.* | Related to Dkt. Nos. 45, 56, 58, 62 |

George M. Conway, Esq.  
Office of the United States Trustee  
Philadelphia, PA  
*Attorney for the United States Trustee*

Bryan P. Keenan, Esq.  
Bryan P. Keenan & Associates, P.C.  
Pittsburgh, PA  
*Attorney for Damien and Casey Harms*

**<u>MEMORANDUM OPINION</u>**

Told that they cannot receive a chapter 7 discharge because their net monthly income indicates that such relief would be an abuse under the totality of circumstances of their financial situation,[1] the debtors Damien W. and Casey M. Harms now want a "do-over." Asserting that *Schedule J*, which was relied upon by the Court, never provided an accurate picture of their monthly expenses, the Harmses now seek reconsideration based on an *Amended Schedule J*[2] that

---

[1] See In re Kubatka, 605 B.R. 339 (Bankr. W.D. Pa. 2019) (*Memorandum Opinion* consolidating the determination of similar motions to dismiss filed by the United States Trustee in three cases and docketed in this case at entry No. 41).

[2] *Amended Schedule J: Your Expenses*, Dkt. No. 56-1.

increases their expenses by $568.06 to include expenditures "inadvertently omitted" from their original schedules.[3] The United States Trustee (the "Trustee") opposes reconsideration, arguing that the Harmses are trying to improperly recast the facts underpinning the Court's judgment.[4] Because the Court finds the Harmses' belated attempt to supplement the record lacks merit and signals bad faith, the *Motion to Reconsider* will be denied.

## I. BACKGROUND

Although no presumption of abuse arose in this case,[5] the Trustee moved to dismiss pursuant to 11 U.S.C. § 707(b)(3)(B),[6] contending that the totality of the circumstances of the Harmses' financial situation nonetheless signaled abuse.[7] He argued that certain expenses, including payments for prepetition taxes and student loan obligations, should be counted towards disposable income (rather than deducted from it), and therefore show an ability to repay creditors. After a hearing and oral argument, consideration of the motion to dismiss was consolidated with two other cases presenting common legal questions. At the Court's direction, both the Trustee and the Harmses filed additional briefs and reply briefs.[8] At no time did any party request an

---

[3]    *Motion to Reconsider the Order Dated September 30, 2019 Pursuant to F.R.B.P. 9024*, Dkt. No. 45 (the "Motion to Reconsider").

[4]    *Opposition to Debtors Motion for Reconsideration by the United States Trustee*, Dkt. No. 58.

[5]    *Chapter 7 Means Test Calculation*, Dkt. No. 1 at 46-54.

[6]    Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[7]    *Motion to Dismiss Case Pursuant to 11 U.S.C. Sec. 707(b)(3) by the United States Trustee*, Dkt. No. 18; see also *Debtor's Response to the United States Trustee Motions to Dismiss Case Filed Pursuant to 11 U.S.C. [sic] by the United States Trustee*, Dkt. 20.

[8]    See *Memorandum in Support of Motions to Dismiss Case(s) by the United States Trustee*, Dkt. No. 33; *Debtors' Supplemental Brief Relating to the UST's Motion to Dismiss Cases Under 11 USC [sic] 707(b)(3)*, Dkt. No. 34; *Memorandum in Response to Debtors' Supplemental Brief by United States Trustee*, Dkt. No. 37; *Debtors' Rebuttal Brief Relating to the UST's Motion to Dismiss Cases Under 11 USC [sic] 707(b)(3)*, Dkt. No. 40.

2

evidentiary hearing or otherwise suggest that the record before the Court—including the bankruptcy schedules—was deficient.

On October 1, 2019, the Court entered a *Memorandum Opinion* concluding that the Trustee sustained his burden under section 707(b)(3)(B) as to the Harmses.[9] To avoid confusion, the Court will address only those aspects of its opinion relevant to the *Motion to Reconsider*.

Generally, the Court "d[id] not discern any bad faith in this chapter 7 filing,"[10] and found that "[t]he Harmses' expenses appear reasonable and necessary, though perhaps slightly understated," specifically noting the absence of an expense for telephone, cell phone, internet, and cable services.[11] That said, the Court held that debts could not be treated as monthly expenses on *Schedule J* if it would favor those creditors over other similarly situated creditors.[12] The Court determined that the Harmses' monthly student loan payments constituted disposable income in an "ability to pay" analysis under section 707(b)(3)(B),[13] but payments to the Internal Revenue Service, their only priority creditor, did not.[14] Recognizing that the tax obligation should be satisfied in 18 months, the Court found that funds would be available for the remaining 42 months of a hypothetical 60-month chapter 13 plan.[15] As a result, the Court reasoned that the Harmses had the ability to pay general unsecured creditors $31,978.80 over 60 months in a hypothetical chapter 13 case and yield a dividend to their general unsecured creditors of approximately 27%.[16]

---

[9] In re Kubatka, 605 B.R. at 371-72.

[10] Id. at 371.

[11] Id.

[12] Id. at 365-67.

[13] Id. at 365-66.

[14] Id. at 366.

[15] Id. at 366-67, 371.

[16] Id. at 371.

Absent other compelling facts, the Court held that the Harmses' "ability to repay creditors is significant enough that allowing them to obtain a chapter 7 discharge would be an abuse under the totality of the circumstances."[17] Rather than dismiss the case outright, the Court afforded them a brief opportunity to consider conversion to chapter 13.

The *Motion to Reconsider*, filed ten days later, seizes on the Court's observation that the Harmses' expenses appeared "slightly understated" and posits the Court made a "significant finding despite not having all the necessary information before it at the time of decision."[18] The Harmses assert that they "inadvertently omitted" their monthly cable, internet, and telephone expenses (for lack of a better term, the "Telecommunications Expenses") from *Schedule J*,[19] and attached statements establishing that these expenses existed at the commencement of the case.[20] They also state that they "failed to adequately list reasonable living expenses associated with raising a toddler/child" or "include a reasonable line item . . . [for] an Emergency Fund," and insist that these expenses were in place at the time of filing.[21] They do not, however, explain why these additional expenses (the "Added Expenses") were omitted from *Schedule J*.

The following table compares the expenses reflected on *Schedule J* to those listed in *Amended Schedule J*:[22]

---

[17]   Id. at 372.

[18]   Id. at 371.

[19]   *Motion to Reconsider*, Dkt. No. 45 at ¶¶ 8, 10.

[20]   See Ex. B, Dkt. No. 45-3; Ex. C, Dkt. No. 45-4; Ex. D, Dkt. No. 45-5.  The Harmses' Verizon Fios statements reveal that they paid $138.88 per month from May 2018 to July 2018 and $162.08 per month from August 2019 to October 2019 for cable, internet, and phone services.  Their Sprint statements indicate they pay roughly $156 per month for cellular telephone service.

[21]   *Motion to Reconsider*, Dkt. No. 45 at ¶¶ 12-13.

[22]   Cf. *Schedule J: Your Expenses*, Dkt. No. 1 at 32 with *Amended Schedule J: Your Expenses*, Dkt. No. 56-1 at 2.  Items listed at "$0.00" on both *Schedule J* and *Amended Schedule J* are omitted.

| Monthly Expense | Schedule J | Amended Schedule J | Difference |
|---|---|---|---|
| Rental or home ownership expense | $737.19 | $737.19 | |
| Home maintenance, repair, and upkeep expenses | $100.00 | $100.00 | |
| Electricity, heat, natural gas | $250.00 | $250.00 | |
| Water, sewer, garbage collection | $134.51 | $134.51 | |
| Telephone, cell phone, internet, satellite, and cable services | $0 | $289.58 | +$289.58 |
| Food and housekeeping supplies | $850.00 | $850.00 | |
| Childcare and children's education costs | $1,083.33 | $1,083.33 | |
| Clothing, laundry, and dry cleaning | $100.00 | $100.00 | |
| Personal care products and services | $0 | $100.00 | +$100.00 |
| Medical and dental expenses | $167.00 | $167.00 | |
| Transportation | $303.33 | $303.33 | |
| Entertainment, clubs, recreation, newspapers, magazines, and books | $100.00 | $150.00 | +$50.00 |
| Vehicle Insurance | $104.00 | $104.00 | |
| IRS Repayment Plan | $75.00 | $75.00 | |
| Car Payments for Vehicle 1 | $435.76 | $435.76 | |
| Student Loan W | $255.00 | $201.78 | -$53.22 |
| Student Loan H | $260.00 | $241.70 | -$18.30 |
| Auto Maintenance | $150.00 | $150.00 | |
| Gifts | $0 | $100.00 | +$100.00 |
| Emergency | $0 | $100.00 | +$100.00 |
| **Total Monthly Expenses** | **$5,105.12** | **$5,673.18** | **+$568.06** |

It is worth noting that while the Harmses' monthly student loan expenses decreased, the impact of this change (given the Court's prior ruling) is to reduce available disposable income. Even more curious, the Harmses' combined monthly income on *Amended Schedule J*, which should simply mirror line 12 of *Schedule I*, decreased even though they did not amend that schedule:

| **Combined Monthly Income** | $5,070.60 | $5,029.99 | -$40.61 |
|---|---|---|---|

As a result of the increased expenses and reduced income on *Amended Schedule J*, the Harmses' monthly net income dropped substantially.

| **Monthly Net Income** | -$34.52 | -$643.19 | -$608.67 |
|---|---|---|---|

Based on the revised expenses in *Amended Schedule J*, the Harmses would not have any disposable income to devote a chapter 13 plan during a hypothetical 60-month term. Even without accepting their new combined monthly income figure, they would have monthly net income of *negative* $159.10 after the Court adds back their student loan and tax payments. Accordingly, the Harmses' request that the Court reconsider its order and permit them to obtain a chapter 7 discharge.

The Trustee filed an opposition, arguing that the Harmses cannot satisfy the standard for relief under Fed. R. Civ. P. 60,[23] or even the more permissive standard Fed. R. Civ. P. 59(e),[24] because they do not offer any supportable reason why the record should be supplemented at this late stage with facts that were known to them on the petition date. In response, the Harmses sidestep the issue by asserting that the Court "properly took judicial notice of the omitted facts in Schedule 'J'" in the *Memorandum Opinion*.[25] Their rationale is not fleshed out, but appears to place significance on the dubious characterization that the Court judicially noticed "omitted facts" rather than the avowed absence of expenses.

At the hearing on the *Motion to Reconsider*, the Harmses asserted that they were entitled to relief under Fed. R. Civ. P. 60(b)(1) because they omitted additional expenses from *Schedule J* by mistake or inadvertence.[26] Noting that the "omitted facts"—*i.e.*, the expenses— were germane to the Court's ruling, the Harmses emphasized that Fed. R. Bankr. P. 1009(a) permits amendment of a debtor's schedules at any time before the case is closed. They essentially argued that the inadvertence of the omission of the Telecommunications Expenses was self-evident

---

[23] Fed. R. Civ. P. 60 is made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

[24] Fed. R. Civ. P. 59(e) is made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023.

[25] See *Debtors' Response to U.S. Trustee's Opposition to Debtors' Motion for Reconsideration*, Dkt. No. 62 at ¶ 9.

[26] The Harmses expressly acknowledged that they were not pursuing relief under any other rule or theory.

6

because nearly all debtors have such expenses and it was not in their interest to exclude an actual, provable expense. The Harmses further contend that their failure to discover the mistake earlier was not unreasonable because the motion to dismiss primarily concerned the treatment of student loan obligations and voluntary retirement contributions. Nevertheless, they could not explain why they initially omitted the Added Expenses (including their "gifts" and "emergency" line items) from *Schedule J*, nor could they justify the changes in their student loan payments or the "combined monthly income" amount shown on *Amended Schedule J*.[27] When the Court suggested that the scale of the alleged omissions implied that the schedules were either recklessly completed or amended in bad faith to avoid an unfavorable ruling, the Harmses immediately abandoned their defense of the Added Expenses. Instead, they urged the Court to reconsider its ruling based solely on the actual Telecommunications Expenses, insinuating that the provability of those expenses shielded them from any taint the Court might otherwise perceive from *Amended Schedule J*.

For his part, the Trustee merely reiterated the thesis of his opposition and argued that nothing in the Harmses' presentation altered the calculus. After oral argument, the Court took the matter under advisement, noting that the *Motion to Reconsider* raised many troubling issues.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[27] In fact, the Debtors' counsel did not appear to recognize that either the student loan payments or combined monthly income decreased on *Amended Schedule J* despite the fact that he presumably completed the amendment.

**III.   DISCUSSION**

Motions for reconsideration are not recognized by the Federal Rules of Civil Procedure, but are generally considered under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b).[28] If filed within 14 days of the judgment, the motion may, but need not, be treated as a motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e).[29] Under this rule, the moving party must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available [prior to entry of] judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[30] Alternatively, the motion may be treated as a motion for relief from a judgment or order under Fed. R. Civ. P. 60(b).[31] To prevail under this rule, the movant must establish at least one of the six enumerated grounds for relief:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.[32]

---

[28] See Grigg v. Chaney (In re Grigg), No. ADV 12-7008-JAD, 2013 WL 5310207, at *1 (Bankr. W.D. Pa. Sept. 20, 2013).

[29] Id.

[30] Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

[31] See In re Grigg, 2013 WL 5310207, at *1-2.

[32] Fed. R. Civ. P. 60(b), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

"It is well settled that a motion for reconsideration seeks an extraordinary remedy that upsets the finality of a decision and therefore should be granted only sparingly."[33]

The Harmses disclaim any theory for relief other than Fed. R. Civ. P. 60(b)(1), and the Court agrees that no other basis exists.[34]  Therefore, the question is whether reconsideration is warranted for "mistake, inadvertence, surprise, or excusable neglect."[35]

None of the terms used in Fed. R. Bankr. P. 60(b)(1) are defined, but courts generally look to the Supreme Court of the United States' decision in *Pioneer Investment Services v. Brunswisk Assoc.*[36] for the meaning of "excusable neglect."[37]  There, the Supreme Court held that "neglect" "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."[38]  It concluded that whether a party's neglect is "excusable" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[39]  Factors informing the court's analysis include, but are not limited to: (1) "the danger of prejudice;" (2) "the length of the delay and its potential impact on judicial proceedings;" (3)

---

[33] Deeters v. Wells Fargo Bank, N.A. (In re Deeters), No. 15-70570-JAD, 2017 WL 4990449, at *2 (Bankr. W.D. Pa. Oct. 27, 2017); see In re Matters Involving Prof'l Conduct of Mazzei, No. MISC. 14-00205-GLT, 2014 WL 4385746, at *3 (Bankr. W.D. Pa. Sept. 4, 2014).

[34] The Harmses do not assert that the *Memorandum Opinion* is legally erroneous or otherwise defective.  Nor can they plausibly argue that their monthly expenses were unknown to them and now constitute "newly discovered evidence."  Moreover, while the prospects of dismissal or conversion may be inconvenient and undesirable to the Harmses, it cannot be said that they will "experience extreme and unexpected hardship if the judgment stands," justifying extraordinary relief under Fed. R. Civ. P. 60(b)(6).  See Norris v. Brooks, 794 F.3d 401, 404 (3d Cir. 2015) ("Relief is appropriate under this catch-all provision only in 'extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.' Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir.1993).").

[35] Fed. R. Civ. P. 60(b)(1).

[36] Pioneer Investment Services v. Brunswisk Assoc., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (interpreting "excusable neglect" for purposes of Fed. R. Bankr. P. 9006(b)).

[37] See Doe v. 9197-5904 Quebec, Inc., 727 F. App'x 737, 739 (3d Cir. 2018); George Harms Const. Co. v. Chao, 371 F.3d 156, 163 (3d Cir. 2004).

[38] Pioneer, 507 U.S. at 388.

[39] Id. at 395; see Chemetron Corp. v. Jones, 72 F.3d 341, 349 (3d Cir. 1995).

"the reason for the delay, including whether it was within the reasonable control of the movant;" and (4) "whether the movant acted in good faith."[40] Notably, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," but "it is clear that 'excusable neglect' . . . is not limited strictly to omissions caused by circumstances beyond the control of the movant."[41]

To apply the standard here, it is necessary to be crystal clear about the nature of the alleged "mistake" or "neglect" now before the Court. The facts advanced by the Harmses suggest at least two "mistakes:" (1) the original omission of expenses from *Schedule J*; and (2) the omission of *evidence* from the record of the contested matter. Given the procedural posture of the case, the distinction between the two is of no small moment.

As to the first omission, the Bankruptcy Code requires debtors to file "a schedule of current income and current expenditures"[42] which must be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.[43] In other words, schedules are executed under the penalty of perjury.[44] The filing of bankruptcy schedules is far from perfunctory, as "the debtor's duty of full disclosure . . . is the *quid pro quo* for the fresh start provided by the discharge."[45] For this reason, it "cannot [be] emphasize[d] strongly enough that it is important that debtors complete their Schedules accurately."[46] That said, errors occur and the Harmses correctly point out that the

---

[40] Pioneer, 507 U.S. at 395; see Orie v. Dist. Attorney Allegheny Cty., 942 F.3d 151, 154–55 (3d Cir. 2019); Nara v. Frank, 488 F.3d 187, 194 (3d Cir. 2007).

[41] Pioneer, 507 U.S. at 392.

[42] 11 U.S.C. § 521(a)(1)(B)(ii); see also Fed. R. Bankr. P. 1007(b)(1)(B).

[43] See Fed. R. Bankr. P. 1008.

[44] See Fraser v. CitiMortgage, Inc. (In re Fraser), 599 B.R. 830, 837 (Bankr. W.D. Pa. 2019).

[45] In re Hicks, 184 B.R. 954, 957 (Bankr.C.D.Cal.1995).

[46] In re B. Cohen & Sons Caterers, Inc., 97 B.R. 808, 817 (Bankr. E.D. Pa.), aff'd in part and remanded, 108 B.R. 482 (E.D. Pa. 1989).

Bankruptcy Rules permit amendment of the schedules "as a matter of course at any time before the case is closed."[47]

But the inaccuracy of the Harmses' schedules was not the issue that directly led to the Court's ruling in the *Memorandum Opinion* that they now seek to reconsider. Omitting the alleged expenses from *Schedule J* likely contributed to the problem, but their failure to submit a complete record of the totality of the circumstances of their financial situation in the contested matter was a separate—and legally significant—mistake. Thus, the Harmses' insistence on their ability to amend a schedule "at any time" as a matter of right is misguided because it is not equivalent to the ability to supplement the record of a previously decided contested matter. It should go without saying that debtors cannot simply avoid adverse rulings based on their schedules by changing that information in a subsequent amendment.[48]

Having identified the mistake at issue in the *Motion to Reconsider*—the Harmses' failure to submit evidence of their complete financial situation into the record—the analysis now turns to whether such neglect is "excusable." The Harmses offer little more than a naked claim of "inadvertence" for the inaccuracy of *Schedule J*, supported by evidence that they did, in fact, have Telecommunications Expenses at all relevant times.[49] They do not address, establish, or even defend the Added Expenses. From there, the Harmses argue that the error reasonably went undiscovered because the motion to dismiss and subsequent briefing focused on the legal treatment of student loan obligations and voluntary retirement contributions in a section 707(b)(3)(B) analysis.

---

[47] See Fed. R. Bankr. P. 1009(a).

[48] Frankly, the Harmses do not appear to seriously dispute that point given that the *Motion to Reconsider* is expressly premised on Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b).

[49] Notably, the Harmses do not acknowledge whether they or their counsel are responsible for the alleged mistakes.

Ultimately, the case law is clear—inadvertence, by itself, is inexcusable.[50] Knowledge of the Harmses' monthly expenses was within their control, and they cannot argue otherwise. Moreover, they cannot claim ignorance to what was reflected on *Schedule J* because they were legally required to review and verify it under the penalty of perjury. The Harmses' second contention fares no better. The core issue posed by the motion to dismiss was whether the "totality of the circumstances . . . of the [Harmses'] financial situation demonstrates abuse."[51] The failure to build an appropriate record or appreciate its contents when a matter is submitted is simply not excusable.[52] A contrary rule would effectively circumvent the "newly discovered evidence" requirement in Fed. R. Civ. P. 60(b)(2) by allowing any newly *provided* evidence to upset a final judgment—the very definition of a "second bite of the apple."

Finally, as the excusable neglect standard also considers whether the movant acted in good faith,[53] the Court must stress that *Amended Schedule J* strongly evinces bad faith. If taken at face value, the idea that nearly $600 of expenses could be inadvertently omitted from *Schedule J* is alarming and suggests that the Harmses expended little diligence or effort to ensure the accuracy of the original schedules. *Amended Schedule J*, however, is too flagrantly manipulative to merit such credit. The changes are clearly designed to elicit a finding that the Harmses will

---

[50] See Pioneer, 507 U.S. at 392; Doe v. 9197-5904 Quebec, Inc., 727 F. App'x at 739.

[51] 11 U.S.C. § 707(b)(3)(B).

[52] See Am. Totalisator Co. v. Fair Grounds Corp., 3 F.3d 810, 815 (5th Cir. 1993) (defendant's failure to ask expert witness important questions during a deposition which deprived them of relevant evidence to oppose summary judgment was not excusable neglect); Parrilla-Lopez v. United States, 841 F.2d 16, 20 (1st Cir. 1988) (counsel's failure to seek out and obtain testimony from known witness could not justify grant of new trial to plaintiff); S.E.C. v. Bilzerian, 729 F. Supp. 2d 9, 11 (D.D.C. 2010) (attorney's purported mistake in not submitting evidence of his withdrawals from the litigation sooner did not warrant relief from an order finding him in contempt for violating an order when the attorney offered no explanation for failing to bring that evidence to the court's attention prior to the entry of the order); Torockio v. Chamberlain Mfg. Co., 56 F.R.D. 82 (W.D. Pa. 1972), aff'd, 474 F.2d 1340 (3d Cir. 1973) (plaintiffs' failure to advise counsel of their receipt of a letter from the Equal Employment Opportunity Commission conferring the right to bring sex discrimination action did not entitle them from relief from dismissal due to excusable neglect).

[53] Pioneer, 507 U.S. at 395.

have no disposable income over the next 60 months. There is no explanation why the amendment adds new, unsubstantiated expenses that were allegedly omitted, reduces the Harmses' combined monthly net income without an amendment to *Schedule I*, and reduces the student loan payments which must be considered disposable income under section 707(b)(3)(B). Worse still, *Amended Schedule J* includes two $100 line items for "gifts" and an "emergency fund," which are ludicrous given that the Harmses purport to have *negative* monthly disposable income of over $400 without these "actual" expenses. Obviously, the Harmses are not saving $100 each month for emergencies if they cannot pay their ongoing expenses.[54] Under these circumstances, gift giving also would be a luxury not reasonably shouldered by their creditors. Not surprisingly, without the $200 in additional expenses, the Harmses would still have $75 of disposable income available once their priority tax obligation is satisfied. Based on these observations, particularly the illusory expenses for gifts and an emergency savings fund, the Court finds the Harmses' *Amended Schedule J* and *Motion to Reconsider* lack good faith.

In sum, reconsideration is unwarranted.

## IV.   CONCLUSION

Based on the foregoing, the *Motion to Reconsider* must be denied. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: January 29, 2020

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtors, Bryan Keenan, Esq., George Conway, Esq.

---

[54] The Court notes that if an emergency fund exists, the inability to pay one's regular expenses as they come due would appear to be an emergency justifying withdrawals from the fund, rather than deposits into it.

13